De Venezuela and others. Arguments not to exceed 15 minutes per side. Mr. Cooper for the appellant. Good morning, Your Honors. Good morning, Counsel. May it please the Court, my name is Ben Cooper. I'm here on behalf of the Appellant, Ben Cooper, and I represent Sky Ventures, and I'll be reserving three minutes for rebuttal. Your Honors, this Court should reverse the District Court's opinion and remand the case for two independent reasons. The first is comedy. The District Court failed to conduct a comedy analysis when it should have. And the second reason is estoppel. The District Court also erred in holding that Venezuela could not be estopped. I'd like to first address the comedy argument. In finding against Sky, the District Court adopted a 2007 ruling that was made by Venezuela's Supreme Court. That was improper because the 2007 ruling turned on a key factual finding. And a District Court can't adopt a foreign court's factual finding without conducting a comedy analysis. I thought the Court, if I'm not mixing up the various Venezuelan rulings here, I thought as to that decision by the Venezuelan Supreme Court that the District Court here didn't treat it as binding in any way, but treated it basically as a piece of evidence. Is that fair? I don't think so, Your Honor. And we see that on pages 82 and 83 of the District Court's opinion. That's where the District Court explains the Venezuelan Supreme Court ruling, specifically notes the factual finding that it turns on. That factual finding, by the way, is that there was no special administrative proceeding. And then it goes to adopt the result of that 2007 ruling. And in adopting the result, it necessarily adopts the factual findings that lead to that result. And the District Court, by the way, adopted that result despite its own factual findings to the contrary. The 2007 ruling says there is no special administrative proceeding. On page 25 of this District Court's opinion, it says that Plaza, who was the Attorney General at the time, initiated or issued the opinion to fulfill the special administrative proceeding. And also this Court need look no further than the Attorney General's opinion itself, which on page 1 says it's being issued in the context of a special administrative proceeding. That's the Article 56 of the OLAG. You started by saying that the District Court did not conduct a comedy analysis. So assuming that that's true, which it is, is that harmless error? And if the Court had conducted the analysis, how would that have affected the ultimate decision that the Court came to? It's not harmless and it has a big impact, potential impact in the case. So first of all, let me say also that the decision of whether or not to conduct a comedy analysis, it's a question of law that this Court reviews de novo. Isn't that usually triggered, though, when the Court is enforcing a foreign judgment? The duty to perform a comedy analysis. That is Venezuela's argument, and that is not the case, Your Honor. Tell us please why not. The reason for that is in a couple of ways. First is the case law. The Hilton v. Gallo case says that comedy is triggered whenever there are, quote, judicial acts, not simply judgments. What is that? I mean, that's extremely vague. I mean, judicial acts? I mean, I don't get it. We have to do something with the judicial acts. Obviously there's a judicial act. What do we have to do with it? What I think this Court could say is that a foreign court's factual finding is certainly a judicial act. I mean, the federal, the United States courts would have to do something with the other court's judicial act, correct? Yes. Or whose judicial act? Exactly. It's the judicial act of another nation, and we're deciding whether that act deserves recognition, deserves deference. Recognition is vague. And does that act have to be final and binding for this Court to have to give it recognition? It, the way that the- Because you said judicial act is kind of vague. Certainly. And the problem here is that the district court gave that act, that factual finding, preclusive effect in this case. That's- The court used a lot of factors, didn't it, to come to its conclusion. I mean, it had, there was a legal, there was an expert offered. There's quite a few factors, as I see it, that went into the Court's decision. That factored into the interpretation of Venezuelan law, according to the Court's decision. It did not factor into the interpretation, or I'm sorry, the adoption of that fact, that factual finding, that there was no special administrative proceeding. And you see that as the whole case turning on that. Exactly, Your Honor. And the problem is that here we have a party in the case who has secretly initiated a proceeding in a foreign court that is designed to affect a key issue that's actually being litigated in the United States. And the worry is that allowing the district court's opinion to stand allows other foreign countries to do the same thing. In a situation like that- Except the foreign note. I mean, with the foreign instrument. It is, Your Honor, but the suit is in the United States, and the issues are being litigated in the United States. Well, there were suits in both countries, correct? Isn't that your point? There was a proceeding in Venezuela that was initiated by the Venezuelan Attorney General, without notice to Sky, without notice to the district court. And if we look at the Attorney General petition that initiated that proceeding, we see that it was specifically designed in response to the case that's going on in the Southern District of Ohio. That petition mentions the Southern District of Ohio. It discusses Sky's experts and says, here's what their experts say. We need you, Supreme Court, to tell us it's not that, to go the other way. Because otherwise, we're going to be liable. And then that's exactly what the Supreme Court did. It issued an expedited ruling. It reached the result that Venezuela had urged it to reach. And Venezuela took that to the district court, and the district court said, I don't need to scrutinize this result. That scrutiny is the comedy analysis. I mean, Judge Sargas, I think, didn't just sort of mechanically follow this Venezuelan Supreme Court opinion by any means. I mean, he looked to expert testimony. I think he looked at himself at the text of the Venezuelan statute. I mean, it really just seemed like he considered this as just kind of one relevant item in a much broader inquiry. And it seems quite far afield from the classic comedy instance of enforcing a foreign judgment. And I don't think that is what the district court said it was doing. But if you read the opinion, that is not what it was doing. He did consider a bunch of expert testimony on this point, correct? He considered two experts about the content of Venezuelan law. And that's actually not what we're arguing with here. We think the content of Venezuelan law supports the position because that 2007 ruling by the Venezuelan Supreme Court, it says that some attorney general opinions are not binding. Some attorney general opinions are binding. An ordinary attorney general opinion, it's in the not binding category. But if an attorney general opinion is issued in the context of a special administrative proceeding – by the way, this holding is on appendix page 1698. If it's issued in the context of a special administrative proceeding, then it is binding. So the Supreme Court said, okay, we need to decide whether this attorney general opinion – which is it? Is it issued in the context of a special administrative proceeding or not? It looked to its files. It said we see no evidence that there was a special administrative proceeding. That's on 1699. It says there's a total and absolute omission of an administrative proceeding. And so based on that factual determination, it concludes, okay, this is in the not binding category. The problem is that the district court simply adopted that outcome, and that outcome – No, he didn't. I mean he really didn't. I mean Judge Sargas was, I think, a lot more thoughtful than that. I mean by no means is he just sort of blindly following the Venezuelan Supreme Court, I think, on that issue. Respectfully, Your Honor, we read the opinion differently. We think that – and you can see that. I think it's on page 82 where he says the Venezuelan Supreme Court has addressed the identical issue involving this. Which is a statement of fact, which is correct. Exactly. And he goes through that and he says here's the outcome of that Supreme Court ruling, and therefore I find that it's not – that the attorney general opinion is not final and binding. And because of that, because he's adopting that outcome, he's necessarily adopting the factual predicates to that outcome. We are asking this court simply to ask the district court – to instruct the district court on remand to conduct a comedy analysis to decide whether that outcome deserves deference. Now, Judge Donald, to your question earlier about would this matter, if on remand the district court were to conduct a comedy analysis, it could decide whether to give preclusive weight to that factual finding. If it didn't, and if it instead said there was a special administrative proceeding, then under Venezuelan law as it exists, as it's been told by the Venezuelan Supreme Court, the attorney general's opinion is binding. That creates an obligation on Venezuela, and the claim for default would then be based on that obligation, defaulting on that obligation. Now, there is one more issue of Venezuelan law that I want to raise with this court. On page 85 of the district court's opinion, Judge Sargas said even if there is a special administrative proceeding and the 2003 attorney general opinion is binding, that Skye nevertheless still loses. And he said that that's because the attorney general can change her mind at any time for any reason. And, Your Honors, that's just simply not true under Venezuelan law. This is an issue of the content of foreign law that this court must review de novo and decide for itself. And frankly, to be honest, it's one that the parties did not provide a lot of briefing about to the district court, which is why both parties submitted Rule 44.1 material to this court on appeal. And the issue here is that, yes, the attorney general could change her opinion, but she could do so only in limited circumstances, none of which are present here. So we're asking with respect to Venezuelan law that this court do two things. The first is to remand and instruct the district court to conduct a comedy analysis. And the second is to hold that as a matter of Venezuelan law, it is not the case that the attorney general can simply change the opinion at any time for any reason. That's not the case. And how best do you think Judge Sargas should analyze Venezuelan law, not look at the Supreme Court opinion or not? I mean, you see the point. I mean, we are asking a district judge in Ohio to do his best with respect to a foreign law. And he had a fair number of things. Did he not, counsel? Certainly, Your Honor. Now you'd like this court to do the same thing when you hadn't briefed it to Judge Sargas. Yes. And there was a bit of testimony on this issue before the district court. But frankly, it was not an argument that either party had raised, that the attorney general could change her mind whenever she wanted for any reason. And that's why rule 44.1 says that the content of foreign law, that those determinations are to be treated as legal rulings. And so they're reviewed by this court de novo. Okay. That helps us. And we'll hear from your opponent now. Thank you, Your Honor. Thank you. Good morning. May it please the Court. Andrew Schwartz for Venezuela and the Venezuelan Ministry of Finance, the Apeliz. Let me start by addressing this issue of whether Judge Sargas was required to conduct the comedy analysis that the appellant says was mandatory here. He was not required to conduct that type of analysis in this case for precisely the reason that the questions from the bench suggest. He was not dealing with a foreign judgment nor an attempt to enforce a foreign judgment. The Hilton case, by the way, which Mr. Cooper referred to, which is sometimes referred to as the seminal case in the area, itself involved a foreign judgment. And all the cases that Sky relies on involve foreign judgments. This Venezuelan Supreme Court opinion was not a judgment against Sky. And importantly, the district court did not treat the opinion as a judgment against Sky. And when you say that it was not a judgment, are you saying that that was evident from the face of the document? Did there have to be reliance on any other documents, statements, or whatever to make that determination? Because your adversary seems to suggest a different position there. I think it is apparent on the face of it. And importantly, we should look at how Judge Sargas regarded the Venezuelan Supreme Court opinion. He didn't treat it as a judgment or even dispositive on Venezuelan law. If he thought it was dispositive on Venezuelan law, it wouldn't be necessary to have taken extensive expert testimony from three Venezuelan law scholars, which he carefully considered. And, yes, he looked at the opinion. And he looked at this Court's opinion from 2010, which had read the Venezuelan Supreme Court opinion correctly. And then he weighed the parties' competing arguments and the evidence. And in that context, having done that holistic analysis, he credited the Venezuelan Supreme Court's opinion and the testimony of our expert over the testimony of Sky's experts. And on that basis, he found that the Attorney General's October 2003 opinion did not have binding preclusive effect, necessitating payment on these fraudulent notes. And I pause here to digress for just a second and note that the extent of the fraud in this case was pervasive and overwhelming, and I think should color every issue in the case. The plaintiff fought bitterly at the trial court level to try to prove that these fraudulent instruments were legitimate. And the district court found, as a factual matter, by clear and convincing evidence, that these were counterfeits. The plaintiff does not challenge that finding on appeal, and instead is resorting to these Venezuelan law and estoppel arguments. What Judge Sargis did was also completely consistent with how this court read the Venezuelan Supreme Court opinion in its 2010 decision. As, Judge Kethledge, I'm sure you recall, the court there wrote, Attorney General opinions of the kind issued in 2003 and relied upon by Sky are not final and binding determinations of the rights of private claimants, but are merely consultative opinions incapable of creating substantive rights on the part of private individuals. That's what this court said. And as for Mr. Cooper's last point about whether Attorney General opinions like this could be changed, this court addressed that point also in 2010, and it said, unequivocally, certain Attorney General opinions, including those issued in 2003 in this dispute, are not binding on private parties and are subject to change. Here's an important facet of this case. Nothing in the Venezuelan Supreme Court opinion, as it was written or as it was construed or applied by Judge Sargis, prevented this plaintiff from trying to prove that the notes were real, and nothing in the Supreme Court opinion, as it was written or construed or applied, prevented Sky from trying to make out its equitable estoppel theory. By the way, I don't know this. Is the Supreme Court of Venezuela the court of last resort equivalent to ours? Yes. This is the constitutional chamber of the Supreme Court. It has various chambers, but with regard to constitutional interpretation, the answer is yes. Do we consider or in any way look at the independence of the court or the neutrality of the court? Because there was something in the record that indicated that the court had ruled in favor of the government some 21,000 times and it never ruled against the government. And while that may be just coincidence, it may suggest something else, is that a factor that ought to be taken into account? How would we take that into account? So, a few responses. First of all, essentially the same argument was made to this court in 2010 and got no traction then. But then at the trial, Sky tried again, same argument, essentially the same evidence. And Judge Sargis considered that evidence. But what he focused on correctly was whether there was any evidence whatsoever of irregularity with regard to this particular decision or whether there was any evidence or suggestion that this decision was politically motivated. And he found, as a matter of fact, that there was no such evidence. That's not clearly erroneous. This is not a situation where, for example, there were 20 contrary precedents on this precise issue of law and then this case came up and all of a sudden the Supreme Court reversed course because it was convenient. This was an issue of first impression. Remember that the organic law of the Attorney General that Sky relies on for this claim was a new law. It came into effect in 2002, as I recall. It had never previously been construed. And if you look at the petitions that were filed by the former Attorney General, who actually started the proceeding, and then the then current Attorney General who joined it, it's clear that there was uncertainty surrounding the application of the law, never in brand new law. Even though it was a new issue, an issue of first impression, one of the parties in there was still a familiar party that would appear to have had a history of successes before the court. I'm not disputing that. Okay. But Judge Sargis, and nor did Judge Sargis dispute it. And he acknowledged that fact but said he's looked at the evidence concerning this particular process and this particular decision and he found nothing untoward. And nor did the plaintiff's expert on Venezuelan law have anything to say about this. He was questioned. Do you have any evidence of anything irregular about this particular proceeding? Answer, no. Mr. Schwartz, before you run out of time, I want to talk to you about whether we even have jurisdiction in this case. You'll recall the last time we had this case, we said we had jurisdiction that the commercial activity exception to the Foreign Sovereign Immunity Act applied because the notes were themselves commercial activity by the state. At that time, we had to assume that the notes were not fraudulent. Now it's been determined and we accept on appeal that the notes were fraudulent. So I gather you would actually rather have us say there's no jurisdiction. I mean, you argued, right, that we lack jurisdiction because the commercial act upon which we kind of tentatively said we had jurisdiction has been shown to be false. I mean, it just didn't happen in the manner that we had to assume. So do you want to speak to jurisdiction at all? I mean, we don't get to the merit stuff unless we have jurisdiction. I had intended to talk about it. I'm happy to talk about it right now because I think it's an important threshold issue and the case can now and should have been dismissed for no jurisdiction. It's the first thing the district court needs to deal with always, subject matter jurisdiction. So the case has an interesting history. Obviously, the court is familiar with it. There was a motion to dismiss under the Foreign Sovereign Immunities Act commercial activity exception. And at that time, the disputed factual issue of whether the notes were real or fake hadn't been resolved. And the way the matter was handled by the former district judge and the magistrate judge, they didn't want to have that resolved early in the case. So the matter got through the district court and to this court based on the assumption provisionally that the notes had been issued. And then the whole appeal in 2010 involved whether the direct effect criterion of the commercial activity exception had been satisfied. That was a controversial subject. It split the court two to one. The court found that there was a direct effect because, as it turns out, what were forged notes didn't specify a place of enforcement. Therefore, they could be enforced anywhere. It's somewhat ironic in retrospect when it turns out that the notes were created by criminals. But we can move past that for now and focus on the preliminary issue of whether there was commercial activity. By the state, yeah. Yeah. As opposed to some fraud by somebody, you know, pretending to be kind of an arm of the state or, you know, a state entity. Exactly. So no serious argument can now be made that there was commercial activity by Venezuela. What did Judge Sargas, did he address the issue we're talking about now? Yes, he did. In light of the fraud finding? Yes, he did. And remind me what happened with that. Judge Sargas, understandably, having conducted a five-week trial, wanted to get to the merits, and I think we can all understand why, even though we were telling him he shouldn't. So he got to the merits, and we were going to win anyway, so maybe he figured no harm, no foul. But in any event, what he said was, if the plaintiff could somehow establish liability on its alternative theories, and it had a whole host of them, only some of which it's still pressing now, then that somehow would convert what was otherwise governmental behavior into commercial activity. He had no citation for that, and that's not right. Basically, you had a situation here where, to some extent, and this is not unusual under the FSIA, the jurisdictional issue and the merits issue overlapped, and we needed to have a trial to ultimately resolve whether there was subject matter jurisdiction. So we had the trial. We proved the notes were fake. Therefore, nobody could seriously say there was commercial activity in 1981 when this imaginary event occurred. It was done by Pavanelli and his criminal syndicate. So now the question becomes, is there anything that happened in 2003 in Venezuela that would take what wasn't commercial activity and transform it into commercial activity? And the answer to that question is, there is nothing. What happened in 2003 was that the Attorney General issued an interagency opinion to the Ministry of Finance. That was a foreign sovereign government's internal administrative act. It was not commercial activity. It was activity peculiarly sovereign in the parlance of the FSIA commercial activity exception jurisprudence. Even if Sky learned of that interagency opinion as it did and relied on it as it says it did, that can't convert a government official's interagency opinion into a commercial activity. So when the district court determined that these notes were fake, that ends the case. The finding that they're fake stands because it was integral to the jurisdictional determination, but the case should have been dismissed. Let me call your attention to a recent Supreme Court case that was decided on May 1st of this year after the briefs were filed in this case. And conveniently enough, Venezuela was the petitioner and won the case, but that's not really why I'm bringing it to your attention. The name of the case is Bolivarian Republic of Venezuela versus Helmerich, H-E-L-M-E-R-I-C-H and Payne International Drilling Company, 137 Supreme Court 1312. There the Supreme Court recognized that in an FSIA case, this one was under the expropriation exception, the merits and jurisdiction may become intertwined. Especially after a 23-day trial. Those were 23 full days. There's a 23-day trial exception to the foreign sovereignty. I hope not. But in any event, the court recognized that this was an anonymous Supreme Court opinion in Venezuela's favor, believe it or not. And the court said, at least in the expropriation exception context, the same is true in the commercial activity context, the merits and jurisdiction can be intertwined. Nevertheless, the district court's got to resolve the jurisdiction issue at the soonest possible opportunity. And if that means having to decide some of the merits, as Judge Breyer said, Justice Breyer said, so be it. The finding the notes were fake eradicated the jurisdictional basis for this case, which was as fraudulent as the notes themselves. My time is up. And which goes unchallenged here. Yes, a remarkable feature of this appeal after the 23-day trial in which that was the central issue. Thank you very much. What do you say, Mr. Cooper, about jurisdiction? I think that the district court correctly held that jurisdiction exists even if the notes weren't actually issued in 1981. No, no. Fake. The notes are fake. What about fakeness? We're taking that as done. Yeah, and here's what – Appeals in 23 days of trial about fake notes. That's where we are. Why do we have jurisdiction in the first place here? Here's why jurisdiction exists, Your Honor. The commercial activities exception that we're relying on requires three things. An act, an act that caused a direct effect in the United States. An act by? And an act that was taken in connection with commercial activity, an act by the foreign sovereign. Right. That act was the refusal to pay notes that Venezuela is obligated to pay. Okay. And so even if – What's the commercial activity by Venezuela? The commercial activity is Venezuela's assessment and investigation of notes that are presented to it for payment. So that refusal to pay is the act. It looks pretty sovereign what they did. Attorney General opinion, I mean, all these ministry reports, that looks rather sovereign. I mean, did the district court engage in commercial activity when it made a review of the evidence and a determination of the authenticity as these various ministries did? I don't think so, Your Honor. What's the difference? I would point this court to the Weltover case from the U.S. What's the difference between what the district court did or a district court might do and what the ministry did, assuming, again, it's trying to be impartial and looking at the evidence and making a determination? The difference is, is that the claimant was saying, you, the Ministry of Finance, are the ones who owe us this money. And so the ministry and Venezuela, through its ministry, acted as any commercial player would, as any bank would, when it was presented with notes for payment. And that's exactly what the Weltover case counsels to. The commercial act is the refusal to pay based on fakeness. The act is the refusal to pay an obligation that is owed to Venezuela. And the obligation could be owed because the notes were issued in 1981. It could be owed under Venezuelan law. It could be owed because of estoppel. Those two issues, the later two, are on appeal. They were the victim of a fraud here as the case comes to us. I mean, you have a criminal syndicate that issues notes in the name of an entity that I guess is later acquired by Venezuela. They're a victim, and so now they're engaging in criminal activity when they just investigate the fraud that was perpetrated against them? What Venezuela did after its seven-month investigation into over a billion dollars of notes was conclude that these are real and that they're obligations of Venezuela. And it knew most, if not all, of the things that the district court said should have raised questions about the notes' validity. It knew that there were fake Vandagra notes floating around. I mean, that was a sandcastle in Hurricane Sandy in terms of the permanence of that finding. I mean, they very quickly revisited that for apparently very good reasons. That particular opinion, of course, did not surface until eight months into this litigation. No one knew about it whatsoever. Venezuela admits that it was not sent to anyone. But I want to direct this court again to Weltover. Weltover says that when a sovereign is regulating a market, that's sovereign activity. But when it's participating in the market, as Venezuela was doing here. So that's your argument, that it's participatory. I think we understand that. I'm noting that because your red light is on. But I think we have your argument. Thank you, Your Honor. With respect to that. If there are no further questions of this court, I'd ask that this court reverse the district court's opinion and remand the case. Thank you. Thanks, counsel. The court will take the matter under advisement and issue an opinion. Are you ready for the next case?